IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QING QIN, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 20-2423-JMY |
| | : | |
| VERTEX, INC., | : | |
|     Defendant. | : | |

**MEMORANDUM**

**Younge, J.**                                                                                             **October 18, 2022**

**I.   INTRODUCTION**

Currently before this Court is Defendant Vertex, Inc.'s ("Vertex") Motion for Summary Judgment (ECF No. 28). The Court finds this motion appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth in this Memorandum, Defendant Vertex's Motion for Summary Judgment (ECF No. 28) will be granted.

**II.   FACTUAL BACKGROUND**

Plaintiff Qing Qin has initiated this civil action against his former employer, Defendant Vertex, a software company that develops and sells corporate tax technology. He has alleged discrimination based on his national origin (Chinese) and race (Asian). (Am. Compl. ¶¶ 2, 12, ECF No. 10.) In October 2000, Plaintiff was hired as an entry-level Architect. (Am. Compl. ¶ 22, ECF No. 10.) For context, Defendant's software architects were distributed across three seniority levels: (1) entry-level Architect; (2) Senior Architect; and (3) Principal Architect. (Am. Compl. ¶ 23, ECF No. 10.) After working for Defendant for over 18 years, Plaintiff asked his manager—Richard Harter—whether Plaintiff's Chinese nationality had anything to do with Plaintiff not being promoted to Senior Architect during his tenure with the company. (Am. Compl. ¶ 52, ECF No. 10.) Plaintiff's manager said "no." Plaintiff alleges, however, that after posing that question in or

around October 2018, he was given his first low performance rating ("Usually Meets Expectations") in February 2019 instead of his normal ("Strong Contributor") rating. (Am. Compl. ¶ 54, ECF No. 10.) Plaintiff would later learn from John Hart, one of his coworkers and reviewers, that Hart's negative review of Plaintiff had been due to Plaintiff's "cultural differences." (Am. Compl. ¶ 59, ECF No. 10.) Shortly thereafter, in March 2019, Defendant gave Plaintiff the option to either undertake a Performance Improvement Plan ("PIP") or accept termination with a severance package—comprised of 26 weeks' pay and benefits. (Am. Compl. ¶ 60, ECF No. 10.) On April 2, 2019, Plaintiff selected the PIP option; however, on May 16, 2019, Plaintiff was terminated due to Plaintiff's alleged unsuccessful completion of the PIP. (Am. Compl. ¶¶ 60-71, ECF No. 10.)

In addition to the "cultural differences" comment made by one of Plaintiff's coworkers and reviewers, Plaintiff also alleges additional instances of problematic behavior. For example, in or around 2016, Plaintiff had suggested that Defendant use a breakthrough technology that had originated in China—to which one of his coworkers within the Chief Tax Office ("CTO")— Bob Norton—responded: "Why don't you go back to China if the technology is so advanced?" (Am. Compl. ¶¶ 42-44, ECF No. 10.) On other occasions, Plaintiff noted that coworkers—whom Plaintiff never identified by name—would call him "China Man." (Pl. Statement of Additional Disputed Material Facts (hereinafter, "SAF"), ¶¶ 35-36, ECF No. 35-2.) In connection with these events and interactions, Plaintiff brings claims for disparate treatment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et seq.*, Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act of 1955 ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*[1] In

---

[1] At this summary judgment stage, Plaintiff "concede[d] to dismissal of his aiding and abetting claim under the PHRA." (Pl. Mem. of Law in Opp. to Def. Mot. for Summ. J., p. 53, ECF No. 35.)

response, Defendant has filed a motion for summary judgment seeking to dismiss all of Plaintiff's claims. (Def. Mot. for Summ. J., ECF No. 28.)

## III. LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007).

In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### IV. DISCUSSION

As an initial matter, it is worth noting that Plaintiff's claims across Title VII, Section 1981, and the PHRA can be consolidated for purposes of this analysis. *See Harley v. McCoach*, 928 F. Supp. 533, 538 (E.D. Pa. 1996) ("[Plaintiff's] Title VII, PHRA, and § 1981 claims all fall under the same analytical framework, and will therefore be examined together.")  Thus, this Court will review Plaintiff's consolidated disparate treatment, hostile work environment, and retaliation claims in turn.

#### a. <u>Disparate Treatment</u>

As the Third Circuit instructs, "[a] disparate treatment violation is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII." *E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir. 1990).  Under a disparate treatment theory, "proof of the employer's discriminatory motive is critical." *Id.*  Further, there are two ways to show discriminatory intent: either through (1) direct evidence; or (2) indirect and circumstantial evidence. *Id.*

##### i. Direct Evidence

Direct evidence of discrimination is evidence that "*is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case* [as is necessary in a

pretext action] to shift the burden of production." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 (3d Cir. 1995) (emphasis in original) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994)). In proffering direct evidence of discrimination, Plaintiff alleges that he had been called "China Man" on a number of different occasions and that Bob Norton had asked him, "Why don't you go back to China if the technology is so advanced?" (SAF, ¶¶ 35-36, ECF No. 35-2.; Am. Compl. ¶¶ 42-44, ECF No. 10.) Additionally, another coworker—John Hart—had informed Plaintiff that Hart's negative review of Plaintiff had been due to Plaintiff's "cultural differences." (Am. Compl. ¶ 59, ECF No. 10.) Taken together, Plaintiff claims that his coworkers' discriminatory remarks are direct evidence of discrimination and that key decisionmakers had sought to remove Plaintiff after discovering that he had been questioning whether his race or national origin played a part in his poor performance rating and lack of a promotion. (Pl. Mem. of Law in Opp. to Def. Mot. for Summ. J., pp. 10-11, ECF No. 35.)

Despite these examples, Plaintiff has failed to show direct evidence of discrimination. First, the comments of the individuals making the alleged discriminatory remarks—Bob Norton ("go back to China"), John Hart ("cultural differences"), and unidentified individuals (calling Plaintiff "China Man")—each amount to what are considered "stray remarks [that] are not direct evidence of discrimination." *Kim-Foraker v. Allstate Ins. Co.*, 834 F. Supp. 2d 267, 277 (E.D. Pa. 2011). Further, the comments were made by coworkers, and not decisionmakers. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J.) (concurring) ("Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard…What is required is…direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision."). Additionally, the content of the alleged remarks do not rise to the level of direct evidence of discrimination. In *Kim-Foraker*, the supervisor stated to the plaintiff, a

5

Korean-American, that the supervisor "was taking kung fu; that Koreans always use cash; and that Koreans always work hard, so expectations for [the plaintiff] were greater than those for other employees." *Kim-Foraker,* 834 F. Supp. 2d at 277. The United States District Court for the Eastern District of Pennsylvania (the "Eastern District") held that "the remarks do not amount to direct evidence of discrimination"—especially since "none of the remarks were uttered when [the defendant] took disciplinary action against [the plaintiff] or made the decision to terminate [the plaintiff's] employment." *Id.* Thus, if such overt and direct comments made by an actual supervisor—not acting in a decisional capacity—do not rise to the level of direct evidence of discrimination, then similar stray remarks made by non-decisionmakers—in this case—also cannot satisfy a direct evidence theory of discrimination.

### ii. Indirect or Circumstantial Evidence

Under the pretext (also referred to as the indirect or circumstantial evidence) theory, the Third Circuit instructs that the U.S. Supreme Court's *McDonnell Douglas* burden-shifting framework applies. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). The *McDonnell Douglas* burden-shifting framework has three potential steps. First, "the plaintiff must…establish a prima facie case of discrimination by showing that: (1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Id.* Second, if the plaintiff makes such a showing of a *prima facie* case, "then an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* Third and finally, if the defendant provides a legitimate, non-discriminatory reason, "the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is

6

merely pretext for intentional discrimination." *Id.* The U.S. Supreme Court reiterated that "[t]he prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Further, "the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Id.* at 512 (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

Turning to the first step of the *McDonnell Douglas* burden-shifting framework, Plaintiff and Defendant seemingly agree that the first three prongs of a *prima facie* Title VII discrimination case are satisfied and, instead, spend the bulk of their time and energy arguing over the fourth prong—*i.e.,* whether the lack of promotion and ultimate termination give rise to an inference of discrimination. (Mem. of Law in Support of Def. Mot. to Dismiss, pp. 20-21, ECF No. 28-1.; Pl. Mem. of Law in Opp. to Def. Mot. for Summ. J., p. 11, ECF No. 35.) Relevant to this analysis, the fourth prong is interpreted differently under a Title VII failure to promote claim and a Title VII termination claim. Under a failure to promote claim, Plaintiff can establish an inference of discrimination "by showing that the position to which she applied and was rejected either: (1) remained open after her rejection and the employer continued to seek applicants with the plaintiff's qualifications; or (2) was filled by someone else who was chosen over the plaintiff." *Scott v. Sunoco Logistics Partners, LP*, 918 F. Supp. 2d 344, 353 (E.D. Pa. 2013) (referencing *Bray v. Marriott Hotels*, 110 F.3d 986, 990 n.5 (3d Cir. 1997)). In this case, there has been no evidence that Defendant sought applicants for the Senior Architect position, nor did Defendant select another candidate over Plaintiff. Under a Title VII termination claim, Plaintiff can establish such an inference of discrimination by "demonstrat[ing] that similarly-situated persons outside the protected class were treated more favorably." *Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 589 (E.D. Pa.), *aff'd,* 708 F. App'x 48 (3d Cir. 2017). To be "similarly situated,"

relevant factors include a "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009). Here, again, Plaintiff has failed to provide evidence which would allow this Court to infer discrimination. Thus, this Court cannot infer that a discriminatory motive had tainted or adversely impacted Defendant's decision not to promote Plaintiff and to ultimately terminate Plaintiff.

Even if Plaintiff had made out a *prima facie* case, Defendant has offered legitimate, non-discriminatory reasons for not promoting Plaintiff and for terminating his employment. As the Eastern District notes, "[t]he defendant satisfies its burden of production, and rebuts the plaintiff's *prima facie* showing of discrimination, simply by introducing admissible evidence that, if taken as true, would permit a finding that the challenged employment action was taken for legitimate, nondiscriminatory reasons." *Collins*, 247 F. Supp. 3d at 590 (quoting *Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 461 (E.D. Pa. 2013)). With respect to the failure to promote claim, Defendant alleges that Plaintiff failed to engage in formalized Vertex initiatives and projects (as instructed by Plaintiff's manager) and, instead, spent most of the year—between August 27, 2018 and March 29, 2019—submitting eleven ideas to Defendant's "idea box," none of which were adopted by Defendant. (Def. Mot. for Summ. J., pp. 20-21, ECF No. 28.) With respect to the termination claim, Defendant asserts that Plaintiff had been terminated for failing to satisfactorily complete his PIP. (Def. Mot. for Summ. J., p. 28, ECF No. 28.) Given these legitimate, non-discriminatory reasons proffered by Defendant, the burden then shifts back to Plaintiff to show that these reasons are merely a pretext for intentional discrimination.

Turning to the third and final step of the *McDonnell Douglas* burden-shifting framework, the Third Circuit describes how Plaintiff "must point to some evidence, direct or circumstantial,

8

from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). To establish pretext under the first *Fuentes* prong, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Id.* at 765 (citations omitted). To establish pretext under the second *Fuentes* prong, the plaintiff could show, for example, "that the employer in the past had subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of his protected class more favorably, or that the employer has discriminated against other members of his protected class or other protected categories of person." *Id.* While the Third Circuit recognizes that "this standard places a difficult burden on the plaintiff, '[i]t arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs.'" *Id.* (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).

In this case, Plaintiff has not proffered sufficient evidence of pretextual discrimination across both his failure to promote and termination claims. With respect to both claims, Defendant's non-discriminatory reasons for not promoting Plaintiff—*i.e.,* not focusing on or being fully engaged in formal Vertex projects and not successfully completing the PIP—have been both consistent and plausible. In fact, even as this Court must view all inferences in a light most favorable to Plaintiff, it is noteworthy that, on May 6, 2019, Plaintiff stated: "Since my pip was extended for two weeks, I put some thoughts on how to seek better outcome than the past 5 weeks,

9

which admittedly had not been effective." (Pl. Resp. to Def. Statement of Undisputed Material Facts, ¶ 123, ECF No. 35-1.) However, despite this admission from Plaintiff regarding his own ineffectiveness throughout the PIP, this Court reiterates the pronouncement made by the Eastern District on several different occasions: "so long as Defendant's investigation and determination was based on a reasonable good faith belief, the Court may not act as a super-personnel department over an employer's business judgment." *Ade v. KidsPeace Corp.*, 698 F. Supp. 2d 501, 517 (E.D. Pa.), *aff'd,* 401 F. App'x 697 (3d Cir. 2010) (quoting *Jackson v. Bob Evans - Columbus*, No. 2:04CV559, 2006 WL 3814099, at *8 (W.D. Pa. Dec. 22, 2006)). Relatedly, under the second prong of *Fuentes* and as described above, Plaintiff has failed to proffer evidence—outside of non-actionable stray remarks from non-decisionmakers and coworkers—that he had been subjected to unlawful discriminatory treatment by Defendant, and Plaintiff also has not shown that other, similarly-situated non-Chinese employees were treated more favorably or that other Chinese employees or other members of a protected class were discriminated against by Defendant.

Taken together, Counts I, IV, and VII are dismissed—as a reasonable jury could not infer that Defendant is liable for discrimination and disparate treatment under Title VII, Section 1981, and the PHRA.

### b. Hostile Work Environment

This Court next reviews Plaintiff's hostile work environment claim. To make out a *prima facie* case, Plaintiff must show that: "(1) he suffered intentional discrimination because of his [race]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (quoting *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001)). When assessing whether

an environment is hostile or abusive, the Third Circuit reiterates the importance of considering the "totality of the circumstances" and "concentrat[ing] not on individual incidents, but on the overall scenario." *Id.* at 262–63 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990)). In conducting this analysis, the U.S. Supreme instructs courts to consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 263 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). However, "'offhanded comments, and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim." *Id.* at 262 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

In this case, Plaintiff's showing of a hostile work environment stem in part from the three comments made by his coworkers—Bob Norton ("why don't you go back to China if the technology is so advanced?"), John Hart ("cultural differences" informed feedback in performance review), and other unidentified individuals (calling Plaintiff "China Man" over the years)—and comments made in his performance review that were based on stereotypical tropes and generalizations of Plaintiff as a Chinese man. (Pl. Mem. of Law in Opp. to Def. Mot. for Summ. J., pp. 51-52, ECF No. 35.) As previously described, these offhanded and isolated comments are not sufficient to establish a hostile work environment claim. In fact, the Eastern District held in a similar action that "[t]he three arguably race-based incidents or comments in the summary judgment record, taken together, fail to establish a severe or pervasive hostile work environment attributable to Defendant." *Hunter v. Trustees of Univ. of Pennsylvania*, No. CV 20-2334, 2021 WL 1424710, at *8 (E.D. Pa. Apr. 15, 2021). In that case, one comment included a critique of the plaintiff's demeanor that relied on a racial trope about angry Black women. *Id.* Another comment involved calling the plaintiff "low," "low down dirty," and "nothing." *Id.* The Eastern District

concluded that "[a] reasonable jury could not conclude from two isolated incidents involving racial stereotypes, two years apart, and only one of which is attributable to a supervisory employee, that Plaintiff was subjected to a racially hostile work environment." *Id.*  Relatedly, the Eastern District has not been keen on crediting or classifying facially neutral comments as direct evidence of a hostile work environment. *See, e.g., Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 546 (E.D. Pa. 2013) ("Plaintiffs admit there is no direct evidence of hostile comments based on their race or ethnicity, and instead rely on only a handful of underwhelming, facially neutral incidents to purport a hostile work environment.").  In sum, Plaintiff's assertion of isolated comments about his national origin and race and alleged indirect tropes, stereotypes, and generalizations within his performance review—none of which came from a supervisory employee—similarly could not lead a reasonable jury to conclude that Plaintiff had been subject to a hostile work environment.

Taken together, Counts II and V are dismissed—as a reasonable jury could not infer that Defendant is liable for creating a hostile work environment under Title VII and Section 1981.

    c. **Retaliation**

Finally, this Court reviews Plaintiff's retaliation claim.  To establish a *prima facie* case, Plaintiff must show that: "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). In this case, Plaintiff points to three instances of protected activity that are connected to Defendant's retaliatory actions in failing to promote Plaintiff and ultimately terminating Plaintiff:

    (1) An **October 2018** meeting where Plaintiff asked his manager if his status as a Chinese man was the reason for his lack of promotion;

(2) A **December 13, 2018** meeting where Plaintiff reached out to Human Resources to inquire about Defendant's reporting procedures; and

(3) A **March 31, 2019** email where Plaintiff stated that his performance review included stereotypical generalizations that were baseless and false.

(Pl. Mem. of Law in Opp. to Def. Mot. for Summ. J., pp. 38-39, ECF No. 35.) In this case, Plaintiff has difficulty satisfying the first and third prongs.

Under the first prong, the Third Circuit instructs that "[o]nly complaints about discrimination prohibited by Title VII—that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2—constitute "protected activity'…General complaints of unfair treatment will not suffice." *Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. 2011). Further, "[i]t is the objective message conveyed, not the subjective intent of the person sending the message, that is determinative [in assessing whether the plaintiff engaged in protected conduct]." *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 137 (3d Cir. 2006). Additionally, protected activity or conduct can include "informal protests of discriminatory employment practices, including making complaints to management." *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (referencing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). However, "[a]lthough informal complaints may suffice, 'the employee's 'opposition' to unlawful discrimination must not be equivocal [or vague].'" *Perry v. Harvey*, 332 F. App'x 728, 733 (3d Cir. 2009) (quoting *Moore v. City of Philadelphia*, 461 F.3d 331, 341–43 (3d Cir. 2006), *as amended* (Sept. 13, 2006)).

Here, the October 2018 meeting only objectively and arguably conveyed a question around whether race had played a part in Plaintiff's lack of promotion. Similarly, the December 13, 2018 meeting only speaks to a desire to understand Defendant's reporting procedures. While the Third Circuit has held that retaliatory action can result from an employer's *perception* that an employee is engaging in protected activity, *see Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 572 (3d Cir.

13

2002)*,* Andrea Falco—Defendant's Employee Relations Advisor—only stated that Plaintiff "was either holding out on me with some information or that he had witnessed something in another area of the business or with a colleague." (Pl. Mem. of Law in Opp. to Def. Mot. for Summ. J., p. 39, ECF No. 35.)  Even this statement does not suggest that an informal complaint had been filed or that such a complaint had directly involved Plaintiff—ultimately making retaliatory motive that much harder to pinpoint in this instance. Taken together, Plaintiff's inquiries—across both the October 2018 and December 2018 meetings—do not seemingly rise to the level of informal complaints or protests, nor do they state opposition to unlawful discrimination in a clear and unequivocal manner that would classify them as "protected activity."  However, even if all three instances could constitute "protected activity," Plaintiff still has not satisfied the third prong—by failing to show a causal connection between the purported protected activity and the alleged retaliation in the form of a lack of a promotion and ultimately being terminated.

In his Amended Complaint, Plaintiff asserts a "close temporal proximity" between his complaint about discrimination and his lack of a promotion and subsequent termination. (Am. Compl. ¶¶ 54, 75, ECF No. 10.) Under the third prong, the "temporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link." *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)). Though "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." *Id.* (quoting *Shellenberger,* 318 F.3d at 189 n.9).  The Third Circuit has also noted that, "where 'the temporal proximity is not so close as to be unduly suggestive,' we have recognized that 'timing plus other evidence may be an appropriate test....'" *Id.* (quoting *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003)).  For context, the Third Circuit has found that two days between protected activity and termination was sufficient on make out a retaliatory discharge

claim. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) ("[The plaintiff] demonstrated the causal link between the two by the circumstance that the discharge followed rapidly, only two days later, upon [the defendant's] receipt of notice of [the plaintiff's] EEOC claim."). On the other hand, the Third Circuit held that a three-week gap between the protected activity and the termination (along with an assessment of the record as a whole) had not been enough to demonstrate an unusually suggestive temporal proximity. *See Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003). Similarly, the Eastern District determined that a two-month gap between the protected activity and the termination was not proximate enough to suggest an unusually suggestive temporal proximity. *See Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 602–03 (E.D. Pa.), *aff'd,* 708 F. App'x 48 (3d Cir. 2017) ("Plaintiff's January 20, 2012…complaint is not sufficiently proximate to her March 20, 2012 termination to suggest a causal link by temporal proximity.").

In this case, the alleged protected activities—that preceded the low performance rating and lack of promotion—took place in October 2018 and December 2018. Defendant made the decision not to promote Plaintiff in February 2019. (Pl. Mem. of Law in Opp. to Def. Mot. for Summ. J., pp. 38-40, ECF No. 35.) Relatedly, the remaining alleged protected activity—sending an email to HR complaining about stereotypical language in Plaintiff's performance review—took place on March 31, 2019. Defendant terminated Plaintiff on May 16, 2019. This timeframe debunks Plaintiff's assertion that the alleged protected activities had occurred in "close temporal proximity" to his lack of a promotion and ultimate termination. Quite the contrary, between two and four months had elapsed between Plaintiff's October 2018 and December 2018 protected activities and his February 2019 denial of promotion. Another approximately two months had elapsed between Plaintiff's March 31, 2019 email and his May 26, 2019 termination. In accord with the Third Circuit's unwillingness—in *Thomas*—to infer a causal connection between a three-week gap

15

between protected activity and the plaintiff's termination and the Eastern District's unwillingness—in *Collins*—to infer a causal connection between a two-month gap between protected activity and the plaintiff's termination, this Court, similarly, refuses to find a causal connection between the two-to-fourth-month gap that exists between Plaintiff's alleged protected activities and Plaintiff's lack of a promotion and subsequent termination.

Thus, Plaintiff is unable to make out a *prima facie* retaliation claim. Given this Court's determination that a *prima facie* retaliation claim has not been made by Plaintiff, this Court declines to engage in the *McDonnell Douglas* burden-shifting framework—which also applies to retaliation claims, *see Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006), *as amended* (Sept. 13, 2006)—for the same reasons stated in the above pretext analysis, *supra* Section (a). As previously discussed, Defendant has proffered a plausible and consistent explanation for both the lack of promotion and the subsequent termination—making it that much harder to uncover any additional evidence within the summary judgment record that would indicate or suggest a discriminatory animus or motive. Stated another way, this Court's inability to find evidence of pretext when analyzing the discrimination claim naturally compels this Court to similarly find a lack of pretext with respect to this retaliation claim.

Taken together, Counts III, VI, and VIII are dismissed—as a reasonable jury could not infer that Defendant is liable for retaliation under Title VII, Section 1981, and the PHRA.

## V.   CONCLUSION

For the foregoing reasons, Defendant Vertex's motion for summary judgment is hereby granted.

An appropriate Order follows.

**IT IS SO ORDERED.**

                                              **BY THE COURT:**

                                        */s/ John Milton Younge*
                                        **JUDGE JOHN MILTON YOUNGE**